CC DISTRIBUTORS, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 05–571C.

United States Court of Federal Claims.

Filed: Jan. 19, 2006.

Opinion Originally Filed under
Seal on Dec. 16, 2005.

Robert G. Fryling, Philadelphia, PA, for plaintiff.

Kelly B. Blank, U.S. Department of Justice, Washington, DC, with whom was Peter D. Keisler, Assistant Attorney General for defendant.

## OPINION ON CROSS–MOTIONS FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD

FIRESTONE, Judge.

This post-award bid protest comes before the court on the parties' cross-motions for

judgment upon the Administrative Record pursuant to Rule 56.1 of the Rules of the United States Court of Federal Claims ("RCFC"). The plaintiff, CC Distributors, Inc. ("plaintiff" or "CCD") protests the award of a requirements contract for a Contractor Operated Civil Engineering Supply Store at Hanscom Air Force Base ("AFB"), Massachusetts, to Maratech Engineering Services Inc. ("Maratech"). The plaintiff seeks to permanently enjoin the performance of the contract. The plaintiff argues (1) that the price reasonableness analysis was improper because the contracting officer failed to compare the offerors' prices for individual items and that the price analysis was arbitrary and capricious and (2) that the contracting officer's determination that Maratech was a responsible contractor was arbitrary and capricious. The defendant, the United States ("government" or "United States"), argues that in this simplified acquisition, the contracting officer was not required to compare prices for individual items and that neither the price analysis nor the responsibility determination was arbitrary and capricious. For the reasons that follow, the government's motion for judgment upon the Administrative Record is **GRANTED**. The plaintiff's cross-motion for judgment upon the Administrative Record is **DENIED**.

## BACKGROUND

On February 17, 2005, the Air Force issued solicitation number FA2835–05–T–0003. The solicitation was in the form of a Request for Quotation ("RFQ"), and it required offerors to submit individual quotations for approximately 1,500 items for the base year plus two option years. The items, largely in the nature of hardware supplies, are for a Contractor Operated Civil Engineering Supply Store ("COCESS") at Hanscom AFB in Massachusetts. Under the terms of the solicitation, the COCESS is required to ensure that the 1,500 items "are stocked and available for immediate issue." AR 113. The RFQ advised offerors that the procurement was being conducted pursuant to Federal Acquisition Regulation ("FAR") Part 12, "Acquisition of Commercial Items," and FAR Part 13, "Simplified Acquisition Procedures."

The solicitation contemplated awarding a firm fixed-price requirements contract.

The RFQ further provided that the award would be based on a "best value" determination. In this connection, the RFQ provided that offers would be evaluated according to FAR § 52.212–2, Evaluation—Commercial Items, and an Addendum to FAR § 52.212–2 that was provided in the RFQ. Under the evaluation criteria set forth in FAR § 52.212–2:

> The Government will award a contract resulting from this solicitation to the responsible offeror whose offer conforming to the solicitation will be most advantageous to the Government, price and other factors considered. The following factors shall be used to evaluate offers: (i) Price; (ii) Past Performance.... The Government will evaluate offers for award purposes by adding the total price for all options to the total price for the basic requirement.

AR 85.

The RFQ's Addendum to FAR § 52.212–2 provided: "Proposals conforming to the solicitation will be determined technically acceptable. Once technically acceptable proposals are determined, tradeoffs may be made between past performance and price to determine the successful offeror." AR 86.

The Air Force received three timely offers. The putative awardee, Maratech, submitted an offer of * * *. The plaintiff, CCD, submitted the next lowest offer of * * *. National General Supply Incorporated ("NGSI") submitted the highest offer of * * *.

The Air Force conducted a technical evaluation. According to the Air Force, the technical evaluator examined each proposing offeror's unit pricing and noted unit prices that he found problematic. Evaluation notices were sent to each of the offerors and each was asked to either verify a price or examine whether the item was priced on a proper unit basis. With regard to each offer, the technical evaluator indicated that all unit prices "appeared reasonable" with the exception of those noted. With regard to Maratech's proposal, the technical evaluator identified eight items as potentially unreasonable. Five items noted were identified on internal docu-

ments to be unreasonably low, and three were noted because of a possible incorrect unit size. AR 351. With regard to CCD's proposal, two price quotations were questioned as too low, two were questioned because the prices were too high, and one price was questioned because it appeared to be based on an incorrect unit size. AR 352. Finally, with regard to NGSI, eight items were noted. Prices were questioned on three items because they appeared to be too low and five were questioned because they appeared to be too high. AR 353.

It is not disputed that the technical evaluator was not perfectly consistent in his questioning among the three offerors. For example, when faced in some instances with similar prices from two different offerors, he may have indicated that one offeror's price was too high and not indicated that the other offeror's price was high. Accordingly, some offerors were asked to provide verifications for certain items while others were not asked to verify comparably priced items. In addition, the technical evaluator did not compare the offerors' prices for the individual items against each other. AR 834 (Cronin Decl. ¶ 7). Further, the technical evaluator concedes in the declaration he filed with this action that he "did not scrutinize each and every item during [his] evaluation." AR 834 (Cronin Decl. ¶ 8). The record demonstrates, with respect to 279 items, or approximately 20% of the 1,500 items, that Maratech's proposal is dramatically less than CCD's proposal. In some instances the difference is nearly 25,000% (Maratech's price was * * * for an item whereas CCD's price for that same item was * * *).

On March 17, 2005, the Contracting Officer ("CO") made the decision to award the contract to Maratech on the basis of price and past performance. The CO's memorandum for the record indicated that all three of the offers conformed to the requirements of the solicitation. The final source selection memorandum explained that the CO was making her "best value" determination in favor of Maratech because, "when compared to the lowest priced offeror, the next higher priced offeror is 104% higher." AR 624. The CO noted that Maratech had received a * * *

past performance rating, while CCD had received an * * * rating. Nonetheless, she stated:

> The difference in price far outweighs the difference in the performance confidence levels .... Awarding to the next higher priced offeror for an increased level of past performance from * * * to * * * for the 104% additional price premium is not justified and would not be in the best interest of the government.

*Id.*

CCD was informed of the CO's decision on March 18, 2005. Thereafter, CCD requested a debriefing, which was provided on March 21, 2005. CCD then filed a bid protest with the Government Accountability Office ("GAO") on March 23, 2005. The contract award was stayed and CCD was issued an interim purchase order contract with two thirty-day options. The first option expired on May 31, 2005.

In its protest before the GAO, CCD challenged the Maratech award on two grounds. First, CCD argued that the Air Force had conducted a flawed price analysis and determination of contractor responsibility. Second, CCD alleged, but then withdrew, a claim that Maratech has an organizational conflict of interest. The GAO denied the bid protest on May 5, 2005. CCD filed the present action, nearly twenty days later, on May 24, 2005, one week before the first option was to expire on May 31, 2005.

In the complaint, CCD again challenges the Air Force's price analysis and the determination of contractor responsibility. The complaint alleges that the price analysis was arbitrary and capricious because the technical evaluator failed to evaluate all offers for price reasonableness on a consistent basis. In support of this claim, CCD identifies nine items, out of a possible 1,500 items, for which Maratech received requests for verification of its bid and CCD did not or vice versa. These include: (1) a government-estimated * * *— * * * gas leak detector that Maratech priced at * * * and CCD priced at * * *, for which CCD complains that it was not put on notice that its price was too high; (2) a government-estimated * * * water heater, for which CCD's price of * * * was questioned,

but Maratech's price of * * * was not; (3) a government-estimated * * * water heater, for which CCD received a request for verification for its * * * price, but Maratech did not, although Maratech priced the same item at * * *; (4) a government-estimated * * *—* * * air conditioner, for which the technical evaluator questioned NGSI's * * * price, but not Maratech's * * * price for the same item; (5) a government-estimated * * *—* * * towel bar, for which NGSI's * * * price was questioned but CCD's * * * price was not; (6) a government-estimated * * * leaf blower, for which NGSI's * * * price was questioned, but Maratech's * * * price for this item and CCD's * * * price for this item were not; (7) a government-estimated * * * flushometer, for which NGSI's * * * price was questioned, but CCD's * * * price and Maratech's * * * price were not; (8) government-estimated * * *—* * * gloves, for which NGSI's price of * * * was questioned, but CCD's * * * price and Maratech's * * * price were not; and (9) government-estimated * * *—* * * mortar mix for which NGSI's * * * price was questioned, but Maratech's price of * * * was not.

CCD also challenges the Air Force's failure to account for the significant price differences between Maratech's and CCD's offers. As noted above, CCD identifies 279 instances in which Maratech's prices were nearly 25,000% to 100% lower than CCD's. CCD alleges based on this record that Maratech's prices were "unreasonably low," and thus the CO's ultimate reasonableness determination was arbitrary and capricious.

CCD also challenges the Air Force's determination of "responsibility," under FAR § 9.103(a). CCD contends that where, as here, Maratech's prices were "unreasonably low" the CO should have made a determination of non-responsibility and referred the matter to the Small Business Administration for a Certificate of Competency pursuant to FAR § 9.103(b) and FAR subpart 19.6.

CCD's complaint was accompanied by a motion for a temporary restraining order. The court denied this motion on June 1, 2005. The case then proceeded to briefing on the merits. The court heard oral argument on December 12, 2005.

## DISCUSSION

### A. Standard of Review

This is an action to set aside the award of a government contract pursuant to 28 U.S.C. § 1491(b) (2000), which provides that this court has jurisdiction "to render judgment on an action by an interested party objecting to a ... proposed award or award of a contract .... [T]he courts shall review the agency's decision pursuant to the standards set forth in section 706 of Title 5." 28 U.S.C. § 1491(b)(1), (4). The Administrative Procedure Act, 5 U.S.C. §§ 701–706 (2000) ("APA"), of which 5 U.S.C. § 706 is a part, in turn provides: "The reviewing court shall— ... (2) hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Under these standards of review, this court may set aside an award of a contract if either: "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324, 1332 (Fed.Cir.2001). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

### B. The Price Reasonableness Analysis Was Not Improper

The plaintiff argues that the award to Maratech must be set aside because the CO's price reasonableness analysis, which was based on the technical evaluation, was improper. First, the plaintiff argues that the CO abused her discretion by failing to conduct a comprehensive comparison of the offerors' unit prices for the 1,500 individual commercial items listed in the solicitation against each other. Second, the plaintiff argues in the alternative that even if such a comparison was not required, the award

must be set aside because the price reasonableness analysis performed by the CO was arbitrary and capricious. Each argument will be examined in turn.

### 1. The Government Was Not Required to Conduct a Comprehensive Unit Price Comparison for Each Item

■ The subject procurement was conducted pursuant to the simplified procedures set forth in FAR Part 13. Under FAR § 13.106–2(b)(1), "the contracting officer has broad discretion in fashioning suitable evaluation procedures. The procedures described in parts 14 and 15 are not mandatory . . . ." FAR § 13.106–2(b)(3) further states: "If using price and other factors, ensure that quotations and offers can be evaluated in an efficient and minimally burdensome fashion . . . . Contracting officers may conduct comparative evaluations of offers." Finally, FAR § 13.106–3(a) provides: "Before making award, the contracting officer must determine that the proposed price is fair and reasonable . . . . Whenever possible, base price reasonableness on competitive quotations or offers." The CO is only required to include a statement of price reasonableness in the contract file if only one response to the solicitation is received. FAR § 13.106–3(a)(2).

Here, it is not disputed that the CO compared prices and ultimately determined that Maratech offered a reasonable price. The record demonstrates that "When compared to the lowest priced offeror, the next higher priced offeror is 104% higher." AR 624 (Best Value Decision Memo for Record). Given that the regulations governing simplified acquisitions give the CO maximum discretion, requiring a more comprehensive unit price comparison by the CO would be inconsistent with FAR § 13.106–2(b). As noted above, FAR § 13.106–2(b) provides, "The contracting officer has broad discretion in fashioning suitable evaluation procedures. The procedures prescribed in parts 14 and 15 are not mandatory . . . . Contracting offices may conduct comparative evaluations of offers." FAR § 13.106–2(b)(1), (3) (emphasis added). Such permissive language indicates

that a comparison of individual unit prices is not required and should not mandated.

Indeed, even the more detailed price analysis called for under FAR Part 15 for negotiated procurements does not call for unit price comparisons. Instead, Part 15 provides that "[p]rice analysis should be used to verify that the *overall* price offered is fair and reasonable," FAR § 15.404–1(a)(3) (emphasis added), and provides the definition: "Price analysis is the process of examining and evaluating a proposed price without evaluating its separate cost elements and proposed profit." FAR § 15.404–1(b)(1). In contrast, "[c]ost analysis is the review and evaluation of the separate cost elements and profit in an offeror's or contractor's proposal . . . ." § 15.404–1(c)(1). FAR § 15.404–1(b)(2) further provides: "The Government may use various price analysis techniques and procedures to ensure a fair and reasonable price. Examples of such techniques include, but are not limited to, the following: (i) Comparison of proposed prices received in response to the solicitation. *Normally, adequate price competition establishes price reasonableness* . . . ." FAR § 15.404–1(b)(2) (emphasis added). Thus, under Part 15, comparison of the overall, or total, prices submitted can constitute a sufficient analysis of price reasonableness. *See* FAR § 15.404–1(a)(1) ("The analytical techniques and procedures described in this section may be used, singly or in combination with others, to ensure that the final price is fair and reasonable. The complexity and circumstances of each acquisition should determine the level of detail of the analysis required.").

In view of the foregoing, the court concludes that a comparison of overall prices is sufficient to satisfy the price reasonableness determination required under Part 13. The CO was not required to compare unit prices for 1,500 individual items. Therefore, the CO did not abuse her discretion by failing to include a comprehensive evaluation of unit prices and unit price differences in her final price reasonableness determination.

### 2. The Price Reasonableness Determination Was Not Arbitrary and Capricious

■ Under the APA standards of review, this court may set aside an award if either:

"(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni*, 238 F.3d at 1332. The "court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43, 103 S.Ct. 2856. In this case, the plaintiff contends that the CO's price reasonableness analysis lacked a rational basis and must therefore be set aside.

Specifically, CCD argues that even if a unit price comparison was not required, once the government decided to look at unit prices it was obligated to rationally address the differences it found among the various offerors. CCD contends that the CO's failure to address the price disparities between Maratech and the other offerors rendered the CO's price reasonableness determination arbitrary and capricious.

The plaintiff's allegations amount to a complaint that the unit price differences between Maratech and CCD were so great that without resolving those differences the CO's price reasonableness determination was arbitrary and capricious. The court finds, however, that evidence of significant unit price differences between Maratech and CCD on 279 of 1,500, or 20% of the, items is not enough to prove that the CO's decision was arbitrary and capricious. CCD's suggestion that the government was obligated under the simplified Part 13 procedures to address unit price discrepancies in order to produce a rational decision is not supported. All that was required was for the CO to conduct some kind of analysis to ensure that the offerors understood the solicitation and that the ultimate price selected was reasonable. The court will not set aside an agency decision under a simplified Part 13 procurement because the CO did not address unit price differences that had been identified in the technical evaluation.

The present record shows that, in addition to comparing the overall prices, the CO, in her discretion, instructed the technical evaluator to "review[ ] all Quotations received in response to the issued Request for Quotations ('RFQ') to determine whether all items had been properly completed in compliance with the solicitation, and whether the offerors' proposed items or substitute items were properly identifiable and technically acceptable." AR 833 (Cronin Decl. ¶ 6). The technical evaluator explained: "My intent was to ensure that each offeror had proposed the appropriate item, i.e., the nomenclature, description, size, quantity, and price were acceptable for the basic year and two option years." AR 834 (Cronin Decl. ¶ 8).

Thus, the technical evaluator examined whether most prices were "reasonable" in the sense of understanding the requirements of and conforming to the solicitation. The court finds that the technical evaluator's conclusion that most prices were reasonable based on this analysis was rational given the 1,500 commercial items at issue. The court cannot say that where 80% of the items at issue were essentially priced the same, the technical evaluator was irrational in concluding that most prices were reasonable.

In this connection, the technical evaluator's reliance on his personal knowledge to support his conclusions regarding price was not arbitrary and capricious. The technical evaluator had daily interaction with the COCESS for nine years, and helped to determine the items that appeared in the solicitation at issue. AR 832–33 (Cronin Decl. ¶¶ 3–5). Furthermore, even when only one response to a solicitation is received and a statement of price reasonableness is required, personal knowledge of the item purchased is a sufficient basis for the price reasonableness statement. FAR § 13.106–3(a)(2)(v).

Finally, because the contract was awarded on the basis of total price, the CO was not required to resolve differences in unit prices to make a rational price reasonableness determination in any event. *See* AR 85 ("The Government will evaluate offers for award purposes by adding the total price for all options to the total price for the basic requirement."); AR 624. The CO was concerned with overall price. The fact that individual unit prices varied was of no moment; the evaluation of total price would indicate whether the overall cost was fair and reasonable. The comparison between Maratech's and CCD's total prices revealed a 104% price difference. This difference is not so great

that it should have triggered further inquiry by the CO into the reasons for the discrepancy. Contrary to CCD's assertions, the price difference did not necessarily reflect that one offeror's price was *unreasonably* high or low. The price difference could just as easily reflect the fact that CCD's price was *somewhat* high and Maratech's price was *somewhat* low. The overall price difference did not demonstrate per se unreasonableness.

In sum, given the substantial discretion afforded to the CO under Part 13, the court cannot say on this record that the government's price reasonableness determination was irrational.

## C. The Responsibility Determination Was Not Arbitrary and Capricious

■ The plaintiff argues that the CO's responsibility determination was also arbitrary and capricious because Maratech's price was too low. CCD argues that the responsibility determination was based on the arbitrary and capricious price reasonableness determination and that there is no other evidence in the record to support a finding of responsibility. The government argues that the responsibility determination is entitled to a presumption of regularity and the plaintiff has failed to overcome that presumption.

The plaintiff has failed to show that the responsibility determination was arbitrary and capricious. As an initial matter, because the court has found that the CO's price reasonableness determination was not arbitrary and capricious, the court rejects the plaintiff's argument that the CO's failure to consider the differences in unit prices between the offerors rendered the responsibility determination irrational. Moreover, as discussed below, the plaintiff has failed to overcome the presumption of regularity that attaches to the CO's responsibility determination.

The FAR provides:

(a) Purchases shall be made from, and contracts shall be awarded to, responsible prospective contractors only. (b) No purchase or award shall be made unless the contracting officer makes an affirmative determination of responsibility. In the ab-

sence of information clearly indicating that the prospective contractor is responsible, the contracting officer shall make a determination of nonresponsibility.

FAR § 9.103(a)-(b).

"The contracting officer's signing of a contract constitutes a determination that the prospective contractor is responsible with respect to that contract." FAR § 9.105-2(a)(1). It is only when the CO makes a finding of nonresponsibility that a separate statement indicating the basis for the finding must be placed in the contract file. *Id.*

Agency decisions for which an explanation is not required are entitled to a presumption of regularity, and "the agency should not be required to provide an explanation unless that presumption has been rebutted by record evidence suggesting that the agency decision is arbitrary and capricious.... The litigant challenging that presumption necessarily bears a heavy burden." *Impresa Construzioni,* 238 F.3d at 1338 (citations omitted).

CCD's objection to the responsibility determination rests on its contention that Maratech's price is too low. "However, the fact that an offer [for a fixed-price contract] may not include any profit or may be an attempted buy-in (below cost) does not, in itself, render an otherwise responsible firm ineligible for award." *Am–Pro Protective Agency, Inc.; MVM, Inc.,* Comp. Gen. Dec. B–271,-385, 96–2 C.P.D. ¶ 192, 1996 WL 784528, *5 (Sept. 23, 1996). Importantly, in fixed-price contracting, "below-cost pricing is not prohibited and the government cannot withhold an award from a responsible offeror merely because its low offer is below cost.... [T]he contract places upon the contractor the risk and responsibility for loss." *Family Realty,* Comp. Gen. Dec. B–247,772, 92–2 C.P.D. ¶ 6, 1992 WL 167007, *2 (July 6, 1992). Thus, a low price without something more is not sufficient to prove lack of responsibility.

Moreover, any concern the government may have had about Maratech's ability to perform the subject contract was mitigated by the solicitation requirement that the CO-CESS ensure that all of the 1,500 recurring items be stocked upon contract award. Un-

284

der the terms of the solicitation, Maratech was required to have all of the items at issue in stock and ready for purchase when it took over the contract. Thus, the government would have known immediately if Maratech could not meet the contract's obligations. The inventory had to be complete. CCD has not presented any evidence to suggest that Maratech has not continued to meet its contract obligations.

In short, Maratech's lower price in comparison to CCD on 279 of 1,500 items is not by itself sufficient evidence to prove that the CO's responsibility determination was arbitrary and capricious. The government is entitled to judgment in its favor on this issue.

### CONCLUSION

For the foregoing reasons, the government's motion for judgment upon the Administrative Record is **GRANTED**. The plaintiff's cross-motion is **DENIED**. The Clerk is directed to enter judgment for the government. Each party shall bear its own costs.

**IT IS SO ORDERED.**